**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF MASSACHUSETTS**

**EASTERN DIVISION**

| | |
|---|---|
| **In re** | |
| **ERIC ZUTRAU,** | |
| **Debtor** | |
| **LEILANI ZUTRAU,** | |
| **Plaintiff** | |
| **v.** | |
| **ERIC ZUTRAU,** | |
| **Defendant** | |

**Chapter 7**
**Case No. 11-11815-FJB**

**Adversary Proceeding**
**No. 11-1183**

**MEMORANDUM OF DECISION AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS COMPLAINT**
**AND ON**
PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

By her amended complaint in this adversary proceeding, Leilani Zutrau, sister of debtor and

defendant Eric Zutrau, seeks a determination that the balance he owes her on five promissory notes,

totaling $427,522.90, is excepted from discharge under 11 U.S.C. § 523(a)(2)(A) as debt arising from

fraud or false representations and under 11 U.S.C. § 523(a)(6) as debt for willful and malicious injury.

The amended complaint also purports to assert objections to discharge under 11 U.S.C. § 727(a)(2), (3),

and (4).  Eric has now moved to dismiss the § 523 counts for failure to state a claim on which relief can

be granted; and Leilani has moved for leave to amend her complaint to add facts that she contends

would support her objections to discharge.

**Procedural History**

On March 3, 2011, Eric filed a petition for relief under chapter 7 of the Bankruptcy Code.  The

first date set for the first meeting of creditors was April 5, 2011, and accordingly the deadline for filing

complaints to object to discharge or to determine the dischargeability of a debt was June 6, 2011. On

that day, Leilani, acting pro se, filed the complaint commencing this adversary proceeding.  The original

complaint sought a determination of nondischargeability under § 523(a)(2)(A) and (a)(6).  It did not

purport to constitute an objection to discharge, did not request a denial of discharge, and made no

reference to § 727(a).  Eric filed an answer on June 22, 2011.  Thirteen days later, on July 5, 2011, Leilani

filed an amended complaint ("Amended Complaint") in which, for the first time, she purported to object

to Eric's discharge under § 727(a)(2), (3), and (4).  The Amended Complaint included new allegations of

fact but failed to specify which of the alleged facts constituted the factual basis for each objection to

discharge.

Eric then filed a Rule 12(b)(6) motion to dismiss the complaint for failure to state a basis for

excepting the debt from discharge under § 523(a)(2)(A) or (a)(6).  The motion is directed at the original

complaint, but, with respect to nondischargeability under § 523(a)(2)(A) and (a)(6), the original and

amended complaints are the same.[1]  Leilani has opposed the motion.  In her opposition and at a hearing

on the motion, Leilani further specified her allegations under § 523(a)(2)(A) and (a)(6).

No objection to discharge having been filed by the deadline for doing so, the Court entered a

discharge in favor of Eric on August 16, 2011.

On February 29, 2012, Leilani filed a second amended complaint and a motion for leave to file

the same.  The stated purpose of the second amendment is to cite facts and information in support of

Leilani's objections to discharge under § 727(a)(2), (3), and (4).  Eric opposes the motion to amend,

---

[1] The motion takes no issue with any objection to discharge.

arguing that any objection to discharge that it amends is untimely and therefore that the proposed

amendment is futile.

**Jurisdiction**

The matters before the court concern a complaint to determine the dischargeability of a debt

under 11 U.S.C. § 523(a) and to deny the debtor a discharge under 11 U.S.C. § 727(a).  In both parts, the

complaint concerns a discharge in bankruptcy, arises under the Bankruptcy Code and in a bankruptcy

case, and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by

standing order of reference,[2] referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a).  The

counts for determination of dischargeability and for denial of discharge are core proceedings within the

meaning of 28 U.S.C. § 157(b)(1).[3]  The bankruptcy court accordingly has authority to enter final orders

on them.

**Motion to Dismiss Complaint for Determination that Debt is Excepted from Discharge**

    a.       **Standard of Review**

When presented with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept

as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in

the pleader's favor."  *Artuso v. Vertex Pharmaceuticals, Inc.*, 637 F.3d 1, 5 (1st Cir. 2011).  Subject to

certain exceptions, a complaint need only contain "a short and plain statement of the claim showing

that the pleader is entitled to relief."  *Id.*, citing Fed. R. Civ. P. 8(a)(2).

> Although there is no need for "detailed factual allegations," *Bell Atl.
> Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929
> (2007), the complaint must "contain sufficient factual matter, accepted
> as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft
> v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)
> (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).  Accordingly, a

---

[2] The order of reference is codified in the district court's local rules at L.R. 201, D. Mass.

[3] See 28 U.S.C. § 157(b)(2)(I) and (J) (core proceedings include objections to discharge and proceedings to
determine the dischargeability of a particular debt).

complaint must include more than a rote recital of the elements of a cause of action; it must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Tambone*, 597 F.3d at 442 (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

*Artuso*, 637 F.3d at 5.


   b.      **Facts**

The Amended Complaint makes the following allegations of fact.

1.       Leilani is Eric's sister.  By a deed recorded in 2003, they are the co-owners, as tenants in common, of property in Oak Bluffs, Massachusetts (the "Oak Bluffs Property").  They agreed to improve the property, a single family home, for personal and investment purposes and to share equally the costs of developing and carrying the property.

2.       In 2006, Eric identified real property in Brookline, Massachusetts ("the Brookline Property") that he believed would be a profitable condominium conversion venture.  He approached Leilani for financing and told her that if she assisted with financing the property, he would be able to repay monies she advanced upon sale of the Brookline Property.  He promised her that she would be paid immediately after the bank mortgages secured by the Brookline Property were satisfied and before any other debts were paid.  He also promised to give gifts of $10,000 each to Leilani and her son upon sale of the Brookline Property.  He agreed to sign a promissory note and execute a mortgage in Leilani's favor and further suggested that a clause be included in the promissory note that would require Eric to sign over his right, title, and interest in the Oak Bluffs Property to Leilani if he defaulted.  On September 22, 2006, Eric executed a promissory note in the amount of $241,000 in Leilani's favor, due on April 22, 2007 ("Note A").  To secure Note A, Eric granted Leilani a mortgage on the Oak Bluffs Property.  Based on Eric's assurances that the proceeds of the sale of the Brookline Property would be used to repay

4

Leilani, and that she would be further protected from any potential default by Note A's loan acceleration clause, Leilani agreed to and did lend $241,000 to Eric.

3.      On December 13, 2006, Eric requested an additional short-term loan of $30,000 to avoid lapses in work on the Brookline Property.  On December 18, 2006, he executed a promissory note in Leilani's favor in the amount of $30,000, with interest at the rate of 7.75% per annum and principal and interest due on February 18, 2007 ("Note B").  By payments of $20,000 on February 21 and $10,000 on March 19, 2007, Eric paid the principal amount of this note, but he has paid no interest on the note.

4.       On January 9, 2007, Eric requested a second short-term loan of $30,000.  On February 18, 2007, he executed a promissory note in Leilani's favor in the amount of $30,000, with interest at the rate of 7.75% per annum and principal and interest again due on February 18, 2007 ("Note C").

5.      On April 23, 2007, Eric requested a third short-term loan of $30,000.  On a date not specified, he executed a promissory note in Leilani's favor in the amount of $30,000, with interest at the rate of 7.75% per annum and principal and interest due on June 14, 2007 ("Note D").

6.      On June 14, 2007, Eric told Leilani that he needed yet another short term loan to keep the Brookline project moving forward.  On another date not specified, he executed a promissory note in Leilani's favor in the amount of $20,000, with interest at the rate of 7.75% per annum and principal and interest due on July 15, 2007 ("Note E").

7.      Each of Notes B, C, D, and E contains a security clause pledging the Brookline Property as collateral for the loans.

8.      In late June 2007, Leilani, having recently lost her job, told Eric he needed to repay his debts to her.  Around the same time, Eric advised Leilani that he would need additional funds to finish the Brookline Project and that his debt repayment to her remained at risk unless she made additional funds available to him.  From June through November 2007, Leilani advanced an additional $150,296.41

to Eric.  As a condition of this further loan, Eric agreed to pay Leilani an additional $15,000 upon

repayment of the principal.

9.      On November 30, 2007, Eric sold the first of three condominium units from the

Brookline project for $550,000.  Despite a promise to keep her apprised of any sale of the Brookline

Property, [4] Eric did not advise Leilani of this sale.  Eric used the proceeds from this sale to pay off one or

more commercial mortgages on the Brookline Property.

10.      On April 30, 2008, Eric sold a second condominium unit from the Brookline project for

$369,000.  From the proceeds of this sale, Eric paid Leilani $250,000.  This payment satisfied (i) the

$150,296.41 extension of credit identified in ¶8 above, (ii) the $15,000 payment that Eric agreed to in

connection with that extension of credit, and (iii) repayment of $84,703.59 toward Eric's obligation for

maintenance and repairs of the Oak Bluffs Property.  It did not satisfy any of Eric's obligations on Notes

A through E.

11.      On June 17, 2008, Eric sold the third condominium from the Brookline project for the

sum of $365,000.  He did not apprise Leilani of this sale.

12.      When, pursuant to the Loan Acceleration clause in Note A, Leilani later asked Eric to

convey his interest in the Oak Bluffs Property to her, he refused.  He said that he had plans to apply for

financing and to liquidate other assets, including a parcel of land that he co-owned with his other sister

("the Dukes County Property"), the proceeds of which he said he would use to repay Leilani.  On

September 25, 2009, however, he conveyed his interest in the Dukes County Property to his and Leilani's

mother for $100.

13.      On June 17, 2008, Leilani asked Eric to reserve one half of any proceeds he received

from the estate of the parties' great aunt ("the Waingrow Estate") to repay her.  Eric agreed.  Between

---

[4]  The complaint does not indicate when Eric promised to keep Leilani apprised of any sale of the Brookline
property; nor does the complaint indicate whether—and, if so, how—she relied on it and whether she suffered
damage on account of that reliance.

June 18, 2009 and May 2, 2010, Eric received distributions from the Waingrow Estate totaling $78,434,

but he made no payments to Leilani from the proceeds.

14.      In January 2009, a company known as Yellow Book of New York, Inc. ("Yellow Book"),

which had obtained a judgment against Eric, levied on the Oak Bluffs Property by recording an execution

in the amount of $22,243.84 against the property.  The execution encumbers the only remaining equity

in the Oak Bluffs Property, which belongs to Leilani.  Later, Eric sued the attorney who had represented

him against Yellow Book for legal malpractice and settled the action for proceeds of $12,000, but Eric

made no effort to use the proceeds to pay down the Yellow Book lien.


c.      **Claims under § 523(a)(2)(A)**

Subsection 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money,

property, services, or an extension, renewal, or refinancing of credit to the extent obtained by false

pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).  Where an exception from

discharge under § 523(a)(2)(A) is based on a false representation, the plaintiff must show that the

debtor (1) made a false representation (2) with fraudulent intent ("scienter") and (3) intent to induce

reliance on the representation, and that the misrepresentation (4) did induce reliance, (5) which was

justifiable and (6) caused damage, pecuniary loss.  *Palmacci*, 121 F.3d at 786; *In re Burgess*, 955 F.2d

134, 139 (1st Cir. 1992) (as to elements other than reasonableness or justifiability of reliance).  This basis

of nondischargeability sounds in fraud and therefore must be pleaded with particularity.  Fed. R. Civ. P.

9(b) (in alleging fraud, a party must state with particularity the circumstances constituting fraud), made

applicable by Fed. R. Bankr. P. 7009.

Eric argues that the complaint fails to state a claim for relief under this subsection because it

alleges nothing more than various breaches of contractual obligations, nothing in the nature of fraud or

misrepresentation.  Eric is correct that the Amended Complaint fails to allege a false representation.

7

Especially in light of the requirement that fraud be pleaded with particularity, Leilani was obligated to

identify each representation on which she relies and, as to each, state that it was false and how it was

false and that Eric knew it to be false when made and that he made it with intent to induce reliance.

The Amended Complaint does none of these things for any representation.  In essence, it alleges only

that Eric made various promises of repayment and that he defaulted on these promises.

In her response to the motion and in her oral argument at the hearing on the motion to dismiss,

Leilani explained that the complaint imperfectly stated the following bases for excepting the debt (or

portions of it) from discharge.  First, when she lent Eric money and Eric gave her promissory notes

evidencing the resulting indebtedness, Eric made promises, memorialized in each of four promissory

notes he gave her (Notes B through E), that he would execute mortgages on the Brookline Property to

secure his obligations to her, but he did not execute any such mortgage, or (if he executed them) at least

did not record mortgages that he did execute.[5]  She contends that his promise to give her mortgages

and record them was a false statement of intent.  Second, Eric knowingly made a false representation

that she relied on when, in an email of September 11, 2006, he assured her that she would be repaid

upon sale of the Brookline Properties and immediately after certain bank mortgages on those properties

were satisfied; the promise was false because Eric made it without intent to honor it.  Third, she

contends that Eric committed fraud by failing to record the promised mortgages and by cheating her out

of repayment after other mortgages on the properties were satisfied.  Fourth, Eric further deceived her

by using his promised repayment as leverage, telling her that he would be unable to repay her unless

she first lent him further amounts.  These are the allegations on which Leilani relies to establish

nondischargeability under § 523(a)(2)(A).  Leilani asks that, if the Court finds her pleading of these

allegations in the Amended Complaint to be insufficient, she be afforded an opportunity to further

amend the complaint.   I will address each of the four causes of action in turn.

---

[5] In places, Leilani contends that Eric did not execute the mortgages in question, and in other places her complaint
is that he did not record mortgages.

**(i)      Promises to Execute and Record Mortgages on Brookline Property**

Leilani first states that the complaint states the following basis for nondischargeability under §

523(a)(2)(A):  she made the loans evidenced by Notes B through E in reliance on promises by Eric,

memorialized in each of four promissory notes, that he would execute mortgages on the Brookline

Property to secure his obligations to her, but he did not execute any such mortgage, or (if he executed

them) at least did not record mortgages that he did execute, and he made the promises without intent

to honor them.  At least implicitly, she alleges that she justifiably relied on this representation and was

injured by that reliance in that she extended credit that has not been repaid.  The basis alleged here is a

false representation of intent, a promise made without intent to honor it.

A false representation of intent can, when pleaded, be a basis for nondischargeability under §

523(a)(2)(A), but this basis was not pleaded in the Amended Complaint.  The Amended Complaint does

not state that Eric promised to execute or record mortgages to secure Notes B through E, only that each

of these Notes contained a clause that itself pledged the Brookline Property as collateral.  Nor does the

amended complaint allege reliance on a promise to execute or record a mortgage or that Eric made this

promise without intent to keep it.

Leilani has moved for leave to further amend the complaint to correct any pleading deficiency

the Court may find.  At this point in the proceeding, amendment requires either the other party's

written assent or leave of court.  Fed. R. Civ. P. 15(a)(2).  Eric has not assented to amendment, so Leilani

may amend only with leave of court.  "The court should freely give leave when justice so requires."  *Id*.

Here I find that justice does so require, and, as to amendments of the § 523 counts, I have not heard Eric

to contend otherwise.  The Court therefore grants leave to amend, and the Amended Complaint shall be

deemed amended as articulated above.  As so amended, the complaint states a claim on which relief can

be granted under § 523(a)(2)(A) for statements of intent to execute and record mortgages on the

Brookline Property.

9

**(ii)      Email Statement of Intent to Pay Immediately After Satisfaction of Mortgages**

Second, Leilani contends that the complaint states, as a further basis for nondischargeability

under § 523(a)(2)(A), that Eric knowingly made a false representation that she relied on when, in an

email of September 11, 2006, he assured her that she would be repaid upon sale of the Brookline

Properties and immediately after certain bank mortgages on those properties were satisfied, and that

this promise was a false statement of intent because Eric made it without intent to honor it.  Again, she

has at least implicitly alleged that she justifiably relied on this representation and was injured by that

reliance in that she extended credit that has not been repaid.  The basis alleged here is again a false

representation of intent.

This allegation is not in the Amended Complaint, which makes no reference to an email of

September 11, 2006, or of the representation it allegedly contains.  Still, the proposed amendment

would state a basis on which relief could be granted under § 523(a)(2)(A), and leave to amend is

appropriate.  The Court therefore grants leave to amend, and the Amended Complaint shall be deemed

amended as articulated above.  As so amended, the complaint states a claim on which relief can be

granted under § 523(a)(2)(A) for a false statement in the email of September 11, 2006, statements of

intent to execute and record mortgages on the Brookline Property.

**(iii)      Failures to Record and to Pay Upon Satisfaction of Mortgages**

Third, Leilani contends that the complaint states, as further grounds for nondischargeability

under § 523(a)(2)(A), that Eric committed fraud (i) by failing to record the promised mortgages and (ii)

by cheating her out of repayment after other mortgages on the properties were satisfied.  Neither

allegation would constitute a basis for nondischargeability under § 523(a)(2)(A).  Neither alleges a

misrepresentation or trickery of any kind.  Both are simple allegations of nonperformance, failure to

keep a promise; and use of the word "cheat," by itself, adds nothing to the simple fact of

nonperformance.  Even if "fraud" in § 523(a)(2)(A) can be construed to include acts that do not fit within

10

the *Palmacci* six-element test reiterated above, it would require more than Leilani has articulated here.

Eric's failures to record and to pay are not by themselves grounds on which some or all of the debt in question can be excepted from discharge under § 523(a)(2)(A).

### (iv)    Need of Further Loan to Enable Repayment

Fourth, Leilani contends that the complaint states, as further grounds for nondischargeability under § 523(a)(2)(A), that Eric deceived her by using his promised repayment as leverage, telling her that he would be unable to repay her unless she first lent him further amounts.  This allegation does not state a basis for nondischargeability under § 523(a)(2)(A) because Leilani has not alleged that the representation—that Eric would be unable to repay her unless she first lent him further amounts—was false and known by Eric to be false when he made it.

### (v)    Conclusion as to § 523(a)(2)(A)

For the reasons set forth above, I conclude that the Amended Complaint, as Leilani has proposed to further amend it, states grounds to except some or all of the debt from discharge under § 523(a)(2)(A), but only as specified in subsections (i) and (ii) above.  The Amended Complaint does not otherwise state a basis on which relief can be granted under § 523(a)(2)(A).

### d.    Claims under § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  It requires injury to another "entity," a defined term that includes a person,[6] or to the property of another entity.  The injury needs to have been both willful and malicious.

> "Willfulness" requires a showing of intent to injure or at least of intent
> to do an act which the debtor is substantially certain will lead to the

---

[6] See 11 U.S.C. § 101(15) (in title 11, "entity" includes person).

11

injury in question.  *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140
L.Ed.2d 90 (1998).  "Malicious" requires the injury to have been
"wrongful," "without just cause or excuse," and "committed in
conscious disregard of one's duties."  *Printy v. Dean Witter Reynolds,
Inc.*, 110 F.3d 853, 859 (1st Cir.1997).  Malice thus has both objective
and subjective elements: the injury must have been objectively
wrongful or lacking in just cause or excuse; and the debtor must have
inflicted the injury in "conscious disregard" of her duties, meaning that
she has to have been aware that the act was wrongful or lacking in just
cause or excuse.

*Burke v. Neronha (In re Neronha)*, 344 B.R. 229, 231-32 (Bankr. D. Mass. 2006).  Eric argues that Leilani

has alleged no willful and malicious injury within the meaning of this subsection, only a simple breach of

contract.

Though the Amended Complaint purports to state a basis for excepting some or all of Eric's debt

from discharge under § 523(a)(6), it nowhere specifies which of its alleged facts constitute the basis for

this relief.  In her response to the motion to dismiss and in her oral argument at the hearing on the

motion, Leilani indicated that the Amended Complaint included three sets of operative facts.  She states

that Eric willfully and maliciously injured her (i) when he failed to pay her the proceeds he received from

the sale of the Brookline Property after the mortgages were satisfied, (ii) when he conveyed his interest

in the Dukes County Property to his mother for $100 instead of liquidating his interest in that property

to pay down his debt to her, as he had indicated he would do, and (iii) when, in August 2009, he

received proceeds from a law suit and refused to use the same to pay down the Yellow Book lien on the

Oak Bluffs Property.  The Amended Complaint does state the facts on which Leilani relies for these three

causes of action.

The complaint recites that Eric pledged the Brookline Property to Leilani as collateral to secure

his obligation on Notes B, C, D, and E.  This pledge would have given her a property interest, a mortgage,

on the Brookline Property and the proceeds of its sale.  If Eric received proceeds in excess of what was

needed to satisfy senior encumbrances, those proceeds belonged in the first instance to Leilani, and

Eric's use of them for his own purposes without her permission would constitute an injury to Leilani's

property within the meaning of § 523(a)(6).  Eric does not argue that the Amended Complaint does not

sufficiently allege that this injury was willful and malicious.  I conclude that the first cause of action

states a basis on which a portion of the debt, the portion attributable to conversion or misappropriation

or her collateral, may be excepted from discharge.

The second and third causes of action do not state a basis for excepting the debt from discharge

under § 523(a)(6).  Each alleges only that Eric failed to use assets available to him to pay down his debt

to her or to reduce an encumbrance on her interest in the Oak Bluffs Property.  Neither alleges an injury

to her property, only a failure to use his own property to improve her position.  The funds he failed to

use for her purposes are, unlike the proceeds of the Brookline Property, not funds in which she claims to

have had a property interest.  For these reasons, I conclude that the complaint states a claim under §

523(a)(6) only insofar as it alleges misappropriation of proceeds from the Brookline Property in which

Leilani claims an interest.

**Motion for Leave to File a Second Amended Complaint**

On February 29, 2012, Leilani filed a second amended complaint and a motion for leave to file

the same.  The stated purpose of the second amendment is to cite facts and information in support of

Leilani's objections to discharge under § 727(a)(2), (3), and (4) and, with the same facts, to support a

newly added request to revoke Eric's discharge under § 727(e).  Although Leilani nowhere indicates how

the second amendment would alter the Amended Complaint, it appears from the Second Amended

Complaint that it would simply (i) add five paragraphs concerning Eric's alleged control over and

postpetition disposition of certain land located on the Caribbean island of St. Vincent in the Grenadines

("the Saint Vincent Property") and (ii) add a demand in the Wherefore clause that the Court "reverse the

Bankruptcy Petition and subsequent Discharge of the Debtor if appropriate."  Eric opposes the motion

on various grounds, including that any objection to discharge that may be stated in the proposed

amendment is untimely and therefore futile, the deadline for objecting to discharge having passed on

13

June 6, 2011, and discharge having already entered.  Leilani filed a reply memorandum in which she

argued that the Court, in its discretion, may revoke a discharge pursuant to 11 U.S.C. § 727(d) and (e).

Eric filed a surreply, reiterating his argument that the objections to discharge are untimely.  Leilani filed

a response to the surreply, arguing that her proposed amendments would relate back to the date of the

original complaint.

Except in the limited circumstances described in Fed. R. Civ. P. 15(a)(1), "a party may amend its

pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Eric has not assented to the proposed amendment, so Leilani needs and has moved for leave to amend.

"The court should freely give leave when justice so requires."  *Id*.  When amendment is futile, however,

a court is within its discretion in denying leave to amend.  *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct.

227, 230 (1962); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993).

> "Futility" of amendment is shown when the claim or defense is not
> accompanied by a showing of plausibility sufficient to present a triable
> issue. . . . This does not require the parties to engage in the equivalent
> of substantive motion practice upon the proposed new claim or
> defense; this does require, however, that the newly asserted defense
> appear to be sufficiently well-grounded in fact or law that it is not a
> frivolous pursuit.

*Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468-69 (D. N.J. 1990).

Eric argues that amendment here would be futile because Leilani did not timely object to entry

of discharge in this case.  She first objected to discharge only in the Amended Complaint, which was filed

after the time for objecting to discharge had expired.  Eric contends that even if this proposed

amendment related back to the date of the Amended Complaint, it would be time-barred.  Leilani

responds with three arguments:  that her amendment would relate back to the date of the original

complaint; that on the record at a hearing on June 21, 2011, she placed Eric on notice that she was

asserting objections to discharge, and therefore he is not now prejudiced by amendment of the

complaint; and that even if the time has passed to object to discharge under § 727(a), she may

nonetheless seek revocation of the discharge under § 727(d) and (e).

I begin with the limitations period for objecting to discharge.  "In a chapter 7 case a complaint

. . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the

meeting of creditors under § 341(a)."  Fed. R. Bankr. P. 4004(a).  There is no dispute here that the

operative deadline was Monday, June 6, 2011.  On motion of a party in interest, the court may for cause

extend the time to file a complaint objecting to discharge, but "[t]he motion shall be filed before the

time has expired," Fed. R. Bankr. P. 4004(b); and "[t]he court may enlarge the time for taking action

under Rule[] . . . 4004(a) . . . only to the extent and under the conditions stated in [that] rule."  Fed. R.

Bankr. P. 9006(b)(3).  Leilani has filed no motion to extend the time to object to discharge, the time has

expired, and, by virtue of Rules 4004(b) and 9006(b)(3), it may no longer be extended.

Only the original complaint was filed before the June 6, 2011 filing deadline.  In that complaint,

Leilani did not, in form or in substance, voice or articulate an objection to discharge or even purport to

do so.  Only in her Amended Complaint, filed on July 5, 2011, did Leilani first indicate that she was

objecting to entry of discharge, cite § 727(a), or set forth the facts on which her objection to discharge is

predicated.  The objection to discharge that she set forth at that time was therefore time-barred.[7]  And,

as Eric argues, even if the amendments in the Second Amended Complaint were deemed to relate back

to the date of the Amended Complaint, they would still be time-barred, no less so than the objection to

discharge it seeks to amend.

Leilani's last argument for salvaging the objection to discharge is the doctrine of relation back.

Relation back is governed by Rule 15(c)(1).[8]  In relevant part, that rule provides that "[a]n amendment to

---

[7] It does not help that, on June 21, 2011, Leilani may have put Eric on notice that she was asserting or intending to assert an objection to discharge.  Rule 4004(a) requires the timely filing of a complaint, not merely the timely giving of notice; and, in any event, June 21, 2012 was itself after the deadline.
[8] Citing to *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 23 (1st Cir. 2009), Leilani argues that the court should apply the relation back law of the Commonwealth of Massachusetts instead of that set forth in Fed. R. Civ. P. 15(c) if the

a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or

defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—

in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).  Leilani contends that the amendments in the

Amended Complaint and the Second Amended Complaint satisfy this requirement, but she fails to

explain how they do so.  In the Amended Complaint, Leilani for the first time included, as the basis for

her objection to discharge, allegations that at the time of his bankruptcy filing, Eric had control of the St.

Vincent Property and could use it for his purposes, even though title to that property was in his mother;

Eric, she says, was the *de facto* equitable and beneficial owner of that property.  In the Second Amended

Complaint, Leilani would add a further allegation: that two months after he filed his bankruptcy petition,

Eric sold the St. Vincent Property and was the beneficiary of the sale proceeds.[9]  The original complaint

included no mention of the St. Vincent Property, much less of Eric's alleged interest in or disposition of

it.  The allegations regarding the St. Vincent Property do not arise out of any conduct, transaction, or

occurrence that was set out, or attempted to be set out, in the original complaint.  These allegations

therefore do not relate back.   It follows that even if amendment were permitted, the objection to

discharge they support would be untimely, and amendment would be futile.  For that reason, the Court

will not permit the amendment to support an objection to discharge under § 727(a), and the Court will

dismiss as untimely the objection to discharge asserted in the Amended Complaint.

In the alternative, Leilani argues that even if objection to discharge is time-barred, *revocation* of

discharge is not, and the proposed amendment would not be futile to support a count to revoke Eric's

---

state law is less restrictive, and therefore that this matter is governed by MASS. GEN LAWS ch. 231, § 51, under
which, she further contends, an amendment, once permitted, automatically relates back.  Her reliance on *Morel* is
misplaced.  *Morel* involved a state law claim that was before the federal court in its diversity jurisdiction, and the
argument for recourse to state law was dependent on the diversity nature of that case.  The present adversary
proceeding, on the other hand, involves an objection to discharge under federal bankruptcy law that is before the
court in its bankruptcy jurisdiction.  *Morel* simply does not apply.  In any event, *Morel* did not hold as Leilani
contends it did.  Rather, it held precisely to the contrary, that Fed. R. Civ. P. 15(c) applies even in diversity matters.
[9] Nowhere has Leilani explained how these allegations, by themselves or in combination with other facts she
perhaps neglected to plead, support an objection to discharge under § 727(a)(2), (3), or (4) or a complaint to
revoke a discharge.

discharge.  The Court agrees.  Section 727(e) permits a party to object to discharge "(1) under

subsection (d)(1) of this section within one year after such discharge is granted; or (2) under subsection

(d)(2) or (d)(3) of this section before the later of—(A) one year after the granting of such discharge; and

(B) the date the case is closed."  11 U.S.C. § 727(e).  Leilani filed her motion for leave to amend and the

Second Amended Complaint within one year after entry of discharge.  Insofar as it asserts a count for

revocation of discharge under § 727(d), the proposed amendment is timely.[10]  Leave to amend will

therefore be granted for that purpose and that purpose only.

**ORDER**

For the reasons set forth above, the Court hereby ORDERS as follows:

1.       With respect to the claims under § 523(a)(2)(A), the Second Amended Complaint is

deemed amended to allege as follows:

   a.  When Leilani lent Eric money and Eric gave her promissory notes evidencing the

       resulting indebtedness, Eric made promises, memorialized in each of four

       promissory notes he gave her (Notes B through E), that he would execute

       mortgages on the Brookline Property to secure his obligations to her, but he did not

       execute any such mortgage, or (if he executed them) at least did not record

       mortgages that he did execute.  His promise to give her mortgages and record them

       was a false statement of intent.

   b.  Eric knowingly made a false representation that Leilani relied on when, in an email

       of September 11, 2006, he assured her that she would be repaid upon sale of the

       Brookline Properties and immediately after certain bank mortgages on those

---

[10] I do not hold that the Second Amended Complaint states a claim for revocation on which relief can be granted;
that issue is not before me.  I hold only that the amendment is not futile on account of untimeliness.

17

properties were satisfied; the assurance was false because Eric made it without

intent to honor it.

2.          Eric's Motion to Dismiss [doc. #9] is granted in part and denied in part as follows:  the

Motion is denied as to the counts under § 523(a)(2)(A) that are articulated by virtue of the amendments

set forth in paragraph 1 above and as to the count under § 523(a)(6) for Eric's failure to pay Leilani the

proceeds he received from the sale of the Brookline Property after the mortgages were satisfied; and as

to all other counts that Leilani has articulated, the Motion to Dismiss is granted.

3.          Plaintiff's Motion for Leave to File a Second Amended Complaint is granted in part and

denied in part as follows:  leave to file the Second Amended Complaint is granted, but the amendments

are permitted only for purposes of a count for revocation of discharge under § 727(d), not for purposes

of any objection to discharge under § 727(a).

4.          The objections to discharge under § 727(a) that Leilani has purported to state in the

Amended Complaint and the Second Amended Complaint are dismissed as untimely.


Date:  November 13, 2012                    _____
                                           Frank J. Bailey
                                           United States Bankruptcy Judge